GEORGE H. CRANZ, Plaintiff in Error, *v.* JOHN KROGER, Defendant in Error.

ERROR TO ROCK ISLAND.

A verbal gift without delivery may be resumed. Not so if the gift is evidenced by a writing.

A parent may resume property given to an infant child, without the consent of the child.

Proof of detention of property, may be made by any circumstances which go to satisfy the jury. If a party refuses to listen to a demand of property, it may be satisfactory.

THIS was an action of replevin, brought by Kroger against Cranz, in the court below.

The declaration alleges the unlawful detention by defendant of certain articles of personal property, to wit: One piano, one piano stool, six chairs, one card table, and one sofa; and a demand made by plaintiff for the same, and a refusal of defendant to deliver, etc.

Pleas: 1, non detinet; 2, property in defendant; 3, property in Amelia Alexander.

Issues to the country.

The plaintiff produced as a witness, *Samuel P. Goodale,* who testified, that sometime in the early part of the season of 1855, a quantity of goods were brought from the depot of the Rock Island Railroad, at Rock Island, to the warehouse of J. H. Langley & Co.; that said goods consisted of one case of glass, three boxes of household goods, four other boxes of goods, one chest, one piano, one barrel, three boxes of furniture, and three bundles of chairs, and all marked "M. E. Kroger." That said goods were taken from the warehouse of said Langley & Co. at various times, and were receipted for by John Kroger, the plaintiff; that sometime after their arrival at said warehouse, and while a portion of said goods yet remained in store, the plaintiff and defendant came together to the warehouse, and inquired after the remaining goods.

It was then admitted at the trial, that among the goods referred to by the witness Goodale, were the articles mentioned and described in the plaintiff's declaration.

*Jasper Fisher*, a witness for plaintiff, testified, that he assisted in moving the articles in controversy in this suit; from the warehouse of said Langley & Co., to a house where defendant was then living. The plaintiff, Kroger, paid witness for this service.

*Truman B. Gorton* testified, that he knew the parties; that while he was sheriff of Rock Island county, defendant was arrested on a capias, and was taken by witness, at defendant's request, before the Probate Court of said county, in order that the defendant might obtain his discharge under the insolvent laws of this State.

The defendant, Cranz, was examined under oath before said Probate Court, in regard to his property. Defendant said he did not own a piano; that the one he had was leased from Mrs. Kroger; that the six mahogany chairs, centre table and sofa, were in the same situation; that he (defendant) had given plaintiff's wife, Mrs. M. E. Kroger, a bill of sale of said articles, and that she owned them; that Kroger and his wife were present at said examination, and that Kroger's wife, at the request of defendant, testified in his behalf on that occasion.

The plaintiff here introduced a schedule, made out and sworn to by defendant before said Probate Court, when seeking his discharge from custody and imprisonment under the insolvent law.

Said schedule and oath thereto bear date October 1, 1855; and among the assets and property of defendant, no mention is made of the property in controversy in this suit. The oath of defendant to said schedule is in the form prescribed by statute in such cases.

*Robert Don* testified, that he went with plaintiff's wife to demand some furniture of defendant. Met defendant on Orleans street. Plaintiff's wife said to him, she wanted her property, but did not specify what. Defendant replied, he had nothing that belonged to her, and passed on.

*Hugh Gilmon* testified: Mrs. Kroger spoke to defendant, and demanded the furniture; witness thinks she had a list on a paper she had in her hand; Mrs. Kroger was apparently about to begin to read, when defendant interrupted her, and said he had no property that belonged to her, and passed on.

On the part of defendant, *Dr. Rathbun* testified, that about two years ago he was present with plaintiff and defendant, and assisted in a settlement of all their matters; witness went, at defendant's request, to see plaintiff, and get a bill of sale that defendant had given to plaintiff's wife, of the property in ques-

tion ; witness saw plaintiff, and made known to him his errand, to which plaintiff replied that he wanted to see his (plaintiff's) wife about it, and would let witness know. A day or two afterwards witness again saw plaintiff, when plaintiff informed witness that his (plaintiff's) wife would not let the bill of sale go to any one but her sister, and that she (plaintiff's wife) meant to hold it for her sister, so that no one else could get the furniture ; that plaintiff's and defendant's wives are sisters ; that at the settlement between plaintiff and defendant, nothing was said about the property in controversy in this suit ; witness went to get the bill of sale, a few days after the settlement occurred.

*Robert W. Smith* testified, that he was present before the Probate Court when defendant sought to be discharged under the insolvent law ; witness examined defendant under oath upon that occasion, and was resisting his discharge ; defendant, before the Probate Court, testified that he did not own the property in question ; that before he left Cleveland, Ohio, where plaintiff and defendant formerly resided, he gave plaintiff's wife a bill of sale of said property, but that she nor plaintiff ever took possession of it ; that he, defendant, still kept the property in his house, and that he now (then) held it under a lease from plaintiff's wife.

*Emilie Alexander* testified, that she was the step-daughter of defendant, and that defendant's wife was witness' mother ; that plaintiff's wife is the aunt of witness and sister to witness' mother ; and that she (witness) was now sixteen years of age. Witness further states, that both plaintiff and defendant, with their families, formerly resided in Cleveland, Ohio ; that while residing there, they lived separate and apart from each other ; that the piano in controversy in this suit was presented and given to her as a Christmas present, by her step-father, the defendant, six years ago last Christmas ; that witness used and possessed said piano in the family of her step-father ever since, with the exception of a short time when she was away at boarding-school ; that she was the only member of her step-father's family that used or practiced on the instrument ; and that the plaintiff and his wife, before the bringing of this suit, often spoke of said piano as her property, and as a Christmas present made witness by her step-father, the defendant ; that the plaintiff and his family, and the family of defendant, moved from Cleveland, Ohio, to Rock Island, Illinois, four years ago last spring ; and that the two families, with the exception aforesaid, came west together with the household goods and furniture (including the property in question) of both families ; that at Cleveland, the boxes containing the household goods and furniture of defendant were marked by defendant, " M. E. Kroger, Rock Island,

Cranz *v.* Kroger.

Illinois;" and that they were thus marked, for the reason that defendant did not expect to leave Cleveland until some weeks after his family left; that some six or eight weeks after defendant's family arrived at Rock Island, defendant came on; that after defendant thus moved, the property in controversy in this suit was brought from the warehouse of Langley & Co. into the house of defendant; that after the arrival of defendant at Rock Island, the families of plaintiff and defendant have never resided together, or in the same house.

On the part of the plaintiff, the court, DRURY, Judge, presiding, was asked to instruct the jury as follows:

1. If, at the time of the commencement of this suit, the plaintiff was the owner of the property in question (either in his own right or in right of his wife), and defendant wrongfully detained the same, the plaintiff is entitled to recover in this suit.

2. If the plaintiff, either in his own right or in the right of his wife, was the owner of the property in question, on or about the month of October, 1855, and there is no evidence of a subsequent sale or transfer thereof, the presumption is, that he continued to be such owner up to the time of commencing this suit.

3. A husband is by law entitled to reduce to his possession the personal property of his wife, and, upon so reducing the same to possession, he is the absolute owner thereof.

4. A sale or gift of property by defendant to plaintiff, when consummated by the parties, is valid and binding upon them, notwithstanding it may have been made and entered into without consideration, with intent to hinder, delay or defraud the creditors of the defendant.

5. Although the defendant may have transferred to plaintiff the property in question, by gift or sale, without consideration, yet, when consummated, such gift or sale is binding on him, and he cannot impeach the same on the ground of fraud, or for want of consideration therein.

6. A sale or gift is consummated by delivery of the property to the vendee; and the acceptance of a lease of property by a party, is conclusive evidence against him, of the possession of the property in the lessor.

7. Admissions by a party are evidence against him; and, although such admission is to be taken together as a whole, the jury are not bound to regard all parts of it with equal confidence. The fact that it is against his interest or for it, its improbability, inconsistency or contradiction, or corroboration by other facts in proof, are circumstances proper to be considered in determining the weight to be given to it.

8. To constitute a legal demand of property in this case, it is not necessary for the demanding party to make use of the word demand, or to specify, by name or particular description, the property demanded; but any language which makes known to the party on whom the demand is made, that the demandant desires the possession of property, and informs him, by reference or otherwise, what property he desires the possession of, is sufficient to constitute a demand.

9. It is incumbent on the plaintiff to show a wrongful detention by the defendant, as against the plaintiff, of the property in question. A demand and refusal are evidence of such wrongful detention, but not the only evidence; other facts and circumstances tending to show such detention, are proper to be shown; and if the jury are satisfied, from such other facts and circumstances, of the wrongful detention, then proof of a demand and refusal is unnecessary.

10. Although a person may give articles of personal property to his infant child or step-child, yet he may afterwards take it away, or sell or dispose of it, at his pleasure, and without his consent or approval.

All which instructions, so asked by plaintiff, were given by the court, and to the giving of which, the defendant at the time excepted.

On the part of the defendant, the court was asked to charge the jury as follows:

1. If, from the evidence in this case, the jury believe that the property mentioned in the plaintiff's declaration, at the time this suit was brought, was the property of the defendant, Cranz, then the jury should return a verdict for the defendant.

2. If, from the evidence, the jury believe that the property mentioned in plaintiff's declaration, or any part thereof, was, at the time this suit was brought, the property of Amelia Alexander, the witness, then the jury should return a verdict agreeable to such finding.

3. If, from the evidence in this case, the jury believe that, at the time this suit was brought, the property in controversy was the property of the plaintiff, still the plaintiff is not entitled to recover in this suit, unless he proves a legal demand of defendant, of the property mentioned in plaintiff's declaration.

4. In order to make a legal demand of articles of personal property by one person from another, such articles of personal property must be indicated by proper words of description, or named so as to apprise the party upon whom the demand is made, what particular property is demanded; otherwise such demand is not sufficient whereon to bring replevin for the detention of personal property.

5. If, from the evidence, the jury believe that the defendant in this suit, without consideration, conveyed, by sale or otherwise, the property in controversy to the plaintiff, such sale or conveyance is void, and the law will not aid the party to whom such sale is made to recover the property, under such circumstances.

6. In order to render a sale without consideration valid between the parties, possession of the personal property sold must follow and accompany the sale; otherwise, such sale is void in law.

7. A person has a right to give articles of personal property to his child, or step-child, and such gift, followed by possession in the donee, will be valid as against all the world, except creditors existing at the time such gift was made.

8. If, from the evidence in this case, the jury believe that the defendant gave the plaintiff's wife a bill of sale of the property in question, and that the plaintiff, afterwards, and while the defendant had possession of the property, negotiated for the surrender of such bill of sale, with a view to the release or abandonment of such sale, then the non-production of such bill of sale at the trial, without explanation, is evidence tending to show that such bill of sale has been canceled, and may be weighed by the jury.

9. If, from the evidence, the jury believe that before the commencement of this suit, and since the plaintiff asserted a claim to the property in question, and while the defendant had possession thereof, the parties came together, and settled and adjusted all matters of controversy between them, then such settlement would bar the plaintiff's right of recovery in this case.

But the court, upon its own motion, modified said defendant's instructions, numbered 3, 5, 7 and 9, as follows:

3. If, from the evidence in this case, the jury believe that, at the time this suit was brought, the property in controversy was the property of plaintiff, still the plaintiff is not entitled to recover in this suit, unless he proves a legal demand of the defendant, of the property mentioned in plaintiff's declaration, *or circumstances showing an unlawful detention.*

5. If, from the evidence, the jury believe that the defendant in this suit, without consideration, conveyed, by sale or otherwise, the property in controversy to the plaintiff, such sale or conveyance is void, and the law will not aid the party to whom such sale is made, to recover possession of the property under such circumstances.

*The above is the law, if the jury further believe, from the evidence, that there was no delivery under the sale.*

Cranz *v.* Kroger.

7.    A person has a right to give articles of personal property to his child, or step-child; and such gift, followed by possession in the donee, will be valid against all the world, except creditors existing at the time such gift was made.    *Given as qualified in plaintiff's instructions as to infant children.*

9.    If, from the evidence, the jury believe that, before the commencement of this suit, and since the plaintiff asserted a claim to the property in question, and while defendant had possession thereof, the parties came together, and settled and adjusted all matters of controversy between them, *in relation to this property,* then such settlement would bar the plaintiff's right of recovery in this case : *Provided the jury believe, from the evidence, that at the time of such settlement, the property was to become the property of defendant.*

The court gave said defendant's instructions, numbered 1, 2, 4, 6 and 8, as asked, and gave instructions, 3, 5, 7 and 9, as modified by the court; and for not giving said instructions as asked, and for giving them as modified, the defendant excepted.

Whereupon, after verdict for plaintiff, said defendant moved for a new trial, for the following reasons :

1.    Because the court gave instructions to the jury, as asked by plaintiff, numbered from one to ten inclusive.

2.    Because the court refused instructions, as asked by defendant, and gave instructions as modified by said court.

3.    Because the court admitted improper evidence in behalf of plaintiff, though objected to by defendant at the time thereof.

4.    Because the court excluded evidence offered by defendant at the trial of said cause.

5.    Because the verdict of the jury is contrary to law and evidence.

Which motion of said defendant for a new trial, was overruled by the court, and to which decision defendant then and there excepted.

Whereupon, the court gave judgment on said verdict for plaintiff.

BEARDSLEY & SMITH, for Plaintiff in Error.

B. C. COOK, and WILKINSON & PLEASANTS, for Defendant in Error.

BREESE, J.    It is a well-settled principle that a verbal gift without delivery can be resumed by the giver.    Not so, however, where the gift is evidenced by writing.    2 Kent's Com. 438 ; *Irons* v. *Smallpiece,* 4 Eng. C. L. R. 635 ; *Caines and Wife* v.

*Marley*, 2 Tenn. (Yerger's) R. Here there was a bill of sale executed to the plaintiff's wife, of the property in question. But assuming the gift of the property to be in parol only, there is proof to show a delivery. The defendant himself marked the boxes containing the articles declared for, at Cleveland, Ohio, to M. E. Kroger, the plaintiff's wife, and forwarded them to her at Rock Island, in this State, where they were placed in a warehouse and taken therefrom by the plaintiff, he giving his receipt for them. It is also proved that defendant had taken a lease of the articles from the plaintiff's wife. The parol gift then, if it was one, was consummated by delivery and could not be recalled; and the acceptance, by the defendant, of a lease of the property from the plaintiff, estopped him from denying her right to it. 5 Bac. Abr., title " Leases."

It cannot be denied, that a parent may give an article of personal property to his infant child, and resume the gift, without the consent of the child, and sell it. This power arises from the position of the parties, and from the principle of control a parent can exercise over his infant child, and all that belongs to it. This disposes of the claim of Amelia Alexander, as arising out of a supposed gift to her of the piano prior to the sale and delivery to the plaintiff, and when she was but ten years of age.

We do not perceive any essential error in any of the instructions, or modifications of those asked by the defendant, as made by the court.

There are certainly more ways than one of proving the detention of property, under that issue in replevin. A demand and refusal is one way, but any circumstances which go to satisfy the jury that a demand would have been unavailing, or a refusal of a party to listen to a demand, would be sufficient. *Johnson* v. *Howe*, 2 Gilm. R. 344.

The weight of evidence is entirely with the plaintiff in this case. On an important occasion, before the Probate Court, the defendant disclaimed all title to this property—insisted it was the plaintiff's, and all the interest that he had in it was a lease, and there is no evidence that since that investigation he has been clothed with the title. The judgment is affirmed.

*Judgment affirmed.*