UNITED STATES of America,
Plaintiff,

v.

Theodis LEMONS and Hilda Lemons,
Defendants.

No. 580.

United States District Court,
W. D. Arkansas, Hot Springs Division.

Nov. 10, 1954.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Mitchell & Mitchell, Hot Springs, Ark., for defendants.

JOHN E. MILLER, District Judge.

On March 18, 1954, plaintiff filed its complaint against defendants, alleging that it was the holder of a promissory note in the principal amount of $896.84, which note, payable to Arkansas Home Building & Repairing Company, had been executed by defendants and delivered to the said Arkansas Home Building & Repairing Co., and that said note had been duly endorsed and negotiated; that at the time of the filing of the complaint the balance due on said note was $786.32, plus interest. Plaintiff prayed judgment against defendants for the principal sum of $786.32, plus interest in the sum of $76.39 as of March

15, 1954, plus interest thereafter at the rate of 6% per annum, together with costs.

On April 27, 1954, defendants filed their answer in which they admitted executing the note payable to Arkansas Home Building & Repairing Company, but denied that said note was delivered or that Arkansas Home Building & Repairing Company was authorized to negotiate said note. Defendants denied that plaintiff was a holder in due course and alleged that the note was not endorsed or negotiated to plaintiff before maturity for value without notice of defendants' defense; that the note was executed upon the consideration that Arkansas Home Building & Repairing Company would furnish certain labor and materials in repairing defendants' home, and that there was a failure of consideration since the work contracted for was not completed and the work performed was not done in a workman-like manner.

Defendants further alleged that Arkansas Home Building & Repairing Company was never authorized to negotiate the note, and denied that they were indebted to plaintiff in any sum.

On June 23, 1954, plaintiff filed and served upon defendants a request for admissions, attaching thereto the promissory note in question, together with the F.H.A. Title I Completion Certificate, Form FH–2, dated June 18, 1952, and purportedly signed by defendant.

The defendant, Theodis Lemons, responded to this request on June 29, 1954, admitting that the said note and Completion Certificate were signed by defendants, but alleging that said signatures were secured by fraud on the part of Arkansas Home Building and Repairing Company. More specifically, defendants alleged that the note and completion certificate were signed by them in blank at the time the contract (for the repair work) was executed on June 5, 1952, upon the consideration and promise of agents of Arkansas Home Building and Repairing Company to prepare another contract, which would include the repairs that had been agreed upon and which had been omitted from the contract dated June 5, 1952; that upon the execution of said corrected contract, the amount of the note and the amount of the monthly installment payments was to be filled in by Arkansas Home Building and Repairing Company; that said corrected contract was never submitted to the defendants for their signature, and the repairs agreed upon were only partially completed.

The defendants also admitted that they made no payments on the note, but denied that they were in default.

A pre-trial conference was had on September 20, 1954, and upon the request of defendants they were granted permission "to amend their answer to deny that they executed the note involved in this cause * * *."

Pursuant to the permission granted by the Court, on September 27, 1954, defendants filed an amended and substituted answer in which they denied executing or signing the note and the completion certificate and alleged that their signatures were placed on said documents without their knowledge or consent. Defendants also denied that plaintiff was a holder in due course.

Upon the issues thus joined the case was tried to the Court, without a jury, on October 19, 1954, and at the conclusion of the trial the case was submitted and taken under advisement by the Court. And now the Court, having considered the pleadings, request for admissions and answers thereto, exhibits, deposition of E. R. Livoni and ore tenus testimony of the witnesses, makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact.

#### 1.

The plaintiff is the United States of America. The defendants are citizens of Arkansas and reside in the Hot Springs Division of the Western District.

## 2.

During the first week in June, 1952, an agent of Arkansas Home Building & Repairing Company came to defendants' home, which is located about six miles from Hot Springs, Arkansas, and discussed with defendants the condition of their home and repairs that were needed. The agent took various measurements of the house, but no details were agreed upon at that time. The agent returned on June 5, 1952, and again discussed the repairs with defendants. On this occasion defendants entered into a contract with Arkansas Home Building & Repairing Company for certain work to be performed on defendants' house, the price of the work to be $780. Both defendants signed the contract, and they also signed a Title I, F.H.A. Credit Application.

Work was started on the house and the work called for by the contract was performed, although defendants were under the impression that additional work was supposed to have been performed.

But the contract, which defendants admittedly executed, provided that "No other work to be done except what is stated in the contract." And it further provided that it was "To be paid for by you according to the following terms: 36 monthly payments of $24.91 each will pay for job in full, including principal and FHA interest."

## 3.

On June 18, 1952, a promissory note in the amount of $896.84, payable to Arkansas Home Building & Repairing Company, was executed, along with a Title I, F.H.A. Completion Certificate. At the trial both defendants denied signing the note and completion certificate, as well as the credit application. And Robert E. Jones, Assistant Cashier of the Arkansas Trust Company, who admittedly was not a handwriting expert but who had observed defendants' signature in connection with banking transactions, testified that he could not say for sure but he doubted that the note and completion certificate were signed by defendants. However, in the sworn response to plaintiff's request for admissions defendants admitted signing the note and completion certificate, and predicated their defense upon fraud and failure of consideration. In view of defendants' admissions, considered along with all the circumstances and facts appearing in the evidence, the Court is unable to find that the signatures on the note and completion certificate are forgeries.

## 4.

On June 19, 1952, said note was negotiated to Allied Building Credits, Inc., for the consideration of $780. Then, on February 25, 1953, the said note was assigned to plaintiff.

## 5.

The note was to be paid in 36 monthly installments of $24.91 each, the first installment to be paid August 1, 1952. The defendants made no payments on the note.

## 6.

The note contains an acceleration clause permitting the holder thereof to declare the note due and payable upon defendants' failure to pay an installment when due.

### Discussion.

The one difficult legal question involved in the instant case is whether a party is absolutely bound by sworn admissions made in response to a request for admissions under Rule 36, Fed.Rules Civ.Proc. 28 U.S.C.A.

It is well settled that such admissions are the equivalent of sworn testimony. Ark-Tenn Distributing Corp. v. Breidt, 3 Cir., 209 F.2d 359; Dorsey v. Reconstruction Finance Corp., 7 Cir., 197 F.2d 468; Sieb's Hatcheries, Inc., v. Lindley, D.C.Ark., 13 F.R.D. 113; Beasley v. United States, D.C.S.C., 81 F.Supp. 518; Dulansky v. Iowa-Illinois Gas & Electric Co., D.C.Iowa, 92 F.Supp. 118.

However, there is a dearth of authority on the question of whether the admissions are absolutely binding upon the party making them. In International Carbonic Engineering Co. v. Natural Carbonic Products, Inc., D.C.Cal., 57 F.Supp. 248, plaintiffs objected to the admission in evidence of certain admissions made by them, primarily because the matters admitted were irrelevant at the time they were made. At page 253 of 57 F.Supp. the Court said:

"The court feels also that the plaintiffs were estopped to deny the truth of the answers or to object to their admissibility, even though they have become relevant only after they were originally filed."

In Vol. 4, Moore's Federal Practice, 2d Ed., at page 2725 it is said:

"A party who has made admissions has been said to be estopped to deny their truth (but this principle, while generally salutary, must surely be subject to qualification under appropriate circumstances); and the admissions are admissible in evidence although they may have become relevant after they were made." (citing the Carbonic case, supra)

In Ark-Tenn Distributing Corp. v. Breidt, D.C.N.J., 110 F.Supp. 644, the Court at page 646 said:

"Plaintiff's attorney alleges that in response to a request for admission the Breidts stated that as officers of the corporation they had control of the funds in question. Plaintiff asserts that Harry Breidt is now precluded from establishing at the trial that he did not exert control over the fund.

"It must be taken into account that Harry Breidt denied having been served the request for admission. The answers to the requests were signed by Charles Handler and sworn to by Jacob Breidt only. It is true that failure to deny is tantamount to an admission, but it is equally true under this rule as under the others, that technical considerations will not be allowed to prevail to the detriment of substantial justice. Barron and Holtzoff, Federal Practice and Procedure, Vol. 2, Section 837. See also, Sulzbacher v. Travelers Ins. Co., D.C., 2 F.R.D. 491; Strasser v. Fascination Candy Co., D.C.Ill., 7 F.R.D. 267.

"Simple justice demands that a person who has no knowledge of a request for admission should not be held liable for his failure to deny. In any event, admissions or denials in response to a request for admission stand in the same relation to the case that sworn testimony bears, Beasley v. United States, D.C.S.C.1948, 81 F.Supp. 518, and in the face of the credible testimony of Harry Breidt this court finds that Harry Breidt in truth had no control over the funds in question or any other funds of U-Need-A Vendors, Inc."

To the same effect, see Ark-Tenn Distributing Corp. v. Breidt, 3 Cir., 209 F.2d 359, affirming the above quoted case.

■ In view of the foregoing authorities and the general purpose of Rule 36, the Court is of the opinion that sworn admissions are not absolutely and conclusively binding upon a party and do not estop the party from denying their truth. However, if a party desires to deny the truth of his admission or admissions, the burden rests upon him to explain the reason said admission was false and to establish that his subsequent testimony, in contradiction of the admission, is in fact the truth. The showing in this regard must be clear and convincing. Otherwise, the salutary purpose of the Rule might be circumvented.

■ Ordinarily, the best practice—when it is learned that a party's admission is untrue—would be to request permission of the Court to execute

amended or supplemental admissions in accordance with the actual truth. The motion should contain a statement of the reasons for the change, and if the Court feels that justice would be served by permitting the amendment or substitution it should grant the party's request. If this procedure is followed, the opposing party will not be subject to surprise. On the other hand, if a party were to wait until the trial of a case before seeking to deny admissions he had made, it would require exceptional circumstances before the Court would be justified in permitting him to deny said admissions. The reason for this is that the opposing party has the right to rely on said admissions as being true, and might not have witnesses available (whose attendance could have been secured if the party had received notice of the proposed repudiation of the admissions) to prove the facts admitted in said admissions. In such event the said opposing party would be greatly prejudiced if the party making the admissions were permitted to deny them during the course of the trial.

In the instant case, defendants did not request permission to amend their admissions, but they did request and were granted permission to amend their answer. The amended answer, which was verified by defendants' attorney, denied that defendants signed the note in question, and therefore plaintiff was on notice prior to the trial that defendants would so testify. Thus, plaintiff was not prejudiced by the action of the Court in permitting defendants to deny, in their ore tenus testimony, that they had signed the note.

It was evident from their testimony that neither of the defendants actually remembered what they signed or when they signed it, and there was no satisfactory evidence that they did not sign the note in question. It is true that there were several suspicious circumstances surrounding the execution of the various documents, such as the difference in dates and the different pens used in signing said documents, but the Court does not feel that defendants have sustained the burden of proving that their original admissions were false and that their ore tenus testimony was true.

Therefore, since defendants have failed to establish that the signatures on the note were forged, the note was a valid and binding obligation. The note was complete and regular upon its face and Allied Building Credits, Inc., purchased the same in good faith and for value before it was overdue, and had no notice of any infirmity in said note or defect in the title of Arkansas Home Building & Repairing Company. Therefore, Allied Building Credits, Inc., was a holder in due course, Sec. 68–152, Ark.Stats.1947, Annotated, and since plaintiff derives its title through a holder in due course, it has all the rights of said holder, Allied Building Credits, Inc., Sec. 68–158, Ark.Stats.1947, Annotated.

It follows that plaintiff is entitled to the relief prayed for in its complaint.

### Conclusions of Law.

#### 1.

The Court has jurisdiction of the parties to and the subject matter of this cause of action.

#### 2.

The note sued upon is a valid obligation, is due, and is unpaid.

#### 3.

Plaintiff is the legal holder and owner of said note, and is entitled to recover of and from defendants the sum of $786.32, being the principal amount of the note after deduction of the unearned interest; together with interest at the rate of 6% per annum from the date of default, August 1, 1952; and costs of this action.

A judgment in accordance with the above should be entered.